UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CORDELL HUBBARD, | ) | 1:06CV0481 |
| | ) | |
| Petitioner | ) | JUDGE PATRICIA GAUGHAN |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| MAGGIE BRADSHAW, | ) | |
| Warden | ) | |
| | ) | |
| Respondent | ) | REPORT AND RECOMMENDED |
| | ) | <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Cordell Hubbard ("Hubbard") has filed, through counsel, an

amended petition for a writ of habeas corpus arising out of his 2003 convictions for

complicity to commit aggravated murder, murder, complicity to commit murder,

kidnapping, complicity to commit kidnapping, felonious assault, and complicity to

commit felonious assault, with firearm specifications, in the Cuyahoga County,

Ohio, Court of Common Pleas.  (Doc. 11.)   Hubbard raises four grounds for relief in

his amended petition:

> 1.  Due Process was violated when the state trial court refused to grant
> Petitioner's request for severance and permitted the introduction into
> evidence of incriminating statements by a co-defendant against the
> Petitioner in the absence of the opportunity for cross-examination.
>
> 2.  Due Process was violated when Petitioner's identification was based
> on a flawed and unreliable photo array and the testimony of a witness
> who was clearly intoxicated and under the influence of drugs and
> another witness who previously stated that she could not possibly
> identify anyone at the murder scene.

3.  Due Process was violated by the admission of testimony in Petitioner's trial regarding inculpatory statements allegedly made to its author by a non-testifying co-defendant and when the prosecution presented a belated identification witness whose testimony was unavailable for challenge during the voire [*sic*] dire which was requested and granted prior to trial.

4.  Due Process was violated when the State Court misapplied the federal standard necessary to determine whether the guilty verdicts returned against the Petitioner were supported by insufficient evidence.

(Doc. 11, at 8-9.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

Appellant [Cordell Hubbard] was indicted and tried with two codefendants, Nichole Hubbard, appellant's sister, and Ru-el Sailor. At the conclusion of trial, appellant was found guilty of complicity to commit aggravated murder (Count 2), murder (Count 3), complicity to commit murder (Count 4), kidnapping (Counts 5 and 7), complicity to commit kidnapping (Counts 6 and 8), felonious assault (Counts 9 and 10) and complicity to commit felonious assault (Counts 11 and 12), all with one-year firearm specifications. Prior to sentencing, the trial court merged counts 2, 3 and 4, counts 5 and 6, counts 7 and 8, counts 9 and 11, and counts 10 and 12. The trial court then sentenced appellant to a total of 23 years to life in prison . . .

The facts relative to this case are as follows. On the evening of November 17, 2002, Nichole Hubbard, Clark Williams ("Williams"), Maria Whitlow and Omar Clark ("Clark") were "hanging out" at the home of Ellen Taylor. Later in the evening, Nichole, Williams, Clark, and Whitlow left to procure drugs. Nichole gave Williams twenty dollars to purchase a "wet" cigarette*, with the understanding that he was to pay her back in full. Whitlow did not participate in the drug buy and was dropped off at her house before the purchase was made. After smoking the wet cigarette, Williams repaid Nichole only ten dollars,

2

arguing that she shared in the drugs and should bear some of the cost.
Nichole became enraged and accused Williams and Clark of cheating
or "playing" her. She called her brother, appellant, on her cell phone;
she then got in her car and left. Williams and Clark proceeded down
Englewood Road toward the home of Ellen Taylor.

     * A cigarette dipped in a solution containing PCP.

A short time later, appellant and Ru-el Sailor arrived on Englewood
Road. Appellant and Williams argued about the money Nichole
claimed Williams owed to her. Meanwhile, Clark confronted Sailor,
who was the driver of the car. Williams noticed that appellant used his
cell phone during the altercation; he then noticed that Sailor was
holding a gun on him. Williams began to run when shots rang out. In
the melee, Clark was shot eleven times and killed. Williams suffered a
slight gunshot wound but survived the attack.

Detective James Metzer of the Cleveland Police Department was
assigned to investigate the case. He spoke with Williams and with
Nichole Hubbard, who made a statement to police with an attorney
present. Within one month of the shooting, Williams was able to
identify appellant from a photo array as the man he had argued with
on the night in question; he later identified Ru-el Sailor as the
"shooter." Nichole Hubbard stated that she had indeed argued with
Williams and had tried to contact her brother, but was only able to
reach his voice mail and did not speak to him on the night in question.
She also told the detective that Williams threatened her with a gun
before she left the scene; however, Williams denied having a gun and
no evidence that he was armed was presented.

During the course of his investigation, Det. Metzer learned that
Nichole Hubbard actually made seven calls to her brother's cellular
phone between 11:57 p.m. and 12:47 a.m. on the night in question, and
none of those calls was referred to voice mail. This information was
confirmed by cellular phone records obtained from Verizon Wireless
and Sprint Communications and introduced into evidence.

Appellant was indicted and tried with Ru-el Sailor and Nichole
Hubbard; of the defendants, only Ru-el Sailor testified. Williams and
other witnesses to the shooting took the stand. Nichole Hubbard's
statement to the police was also admitted as evidence. As to the
appellant, the jury returned guilty verdicts on all counts except
aggravated murder. At his sentencing hearing, appellant stated that

3

he was with a man named Will on the night of the shooting and that
Sailor was not there. However, at a hearing on Sailor's motion for a
new trial, appellant testified that he shot Clark in self-defense (a
defense never asserted at trial) while accompanied by a man named
William Sizemore and that Sailor had nothing to do with the shooting.

(Doc. 14, RX 10, at 2-5; <u>State v. Hubbard</u>, No. 83384, 2004 WL 1944810, at *1-*2

(Ohio Ct. App. Sept. 2, 2004).)

On Jan. 20, 2004, Hubbard filed a notice of appeal, raising thirteen

assignments of error, as follows:

1.  The trial court erred when it denied the appellant's motion for
severance from his sister and co-defendant Nichole Hubbard which
was a clear <u>Bruton</u> violation.

2.  The trial court erred when it denied the appellant's motion to
suppress the identification testimony of Clark Williams.

3. The trial court erred when it allowed the state to present testimony
of Ellen Taylor regarding statements allegedly made to her by co-
defendant Nichole Hubbard implicating appellant and the admission of
this testimony was violative of his right to confrontation and right to
due process.

4. Appellant was denied due process when the trial court denied the
appellant's motion for mistrial when the state had presented belated
identification witness testimony during the middle of trial although
the appellant had timely filed a motion to suppress identification
testimony and a hearing was had on that motion.

5.  The trial court erred when it denied the appellant's motion to
suppress the identification testimony of state witness Tennita
Johnson.

6.  The trial court erred when it denied appellant's motion for
judgment of acquittal pursuant to Rule 29 of the Ohio Rules of
Criminal Procedure due to state's failure to present sufficient evidence
of guilt for the charge of complicity to commit aggravated murder.

4

    7.  The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of murder.

    8.  The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of complicity to commit murder.

    9.  The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of kidnapping in counts 5 and 7 of the indictment.

    10.  The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of complicity to commit kidnapping in counts 6 and 18 of the indictment.

    11.  The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charges of felonious assault in counts 9 and 10 of the indictment.

    12.  The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of complicity to commit felonious assault in counts 11 and 12 of the indictment.

    13.  The verdicts finding the appellant guilty are against the manifest weight of the evidence and are contrary to law.

(Doc. 14, RX 7.)  On Sept. 2, 2004, the court of appeals affirmed his conviction.

(Doc. 14, RX 10; <u>State v. Hubbard</u>, No. 83384, 2004 WL 1944810, at *1-*2 (Ohio Ct. App. Sept. 2, 2004).)

5

Hubbard filed a timely appeal with the Ohio Supreme Court on Nov. 29, 2004, setting forth thirteen propositions of law:

1.  When there is a <u>Bruton</u> violation, an accused is entitled to a severance from a co-defendant.

2.  An eyewitness who was clearly intoxicated and under the influence of drugs should not be permitted to make a positive identification of the accused when the photo-array was likewise flawed and unreliable.

3.  Where a witness is allowed to testify regarding statements allegedly made to her by a co-defendant implicating the accused, the admission of such testimony violates his right of Confrontation and the rule established in <u>Crawford</u>.

4.  Due process is denied when the prosecution presents a belated identification witness where the accused was unable to challenge that testimony before trial, and had no notice of this identification witness was given to the defense.

5.  Due process is denied when an identification witness who previously stated that she could not possibly identify anyone, and is later presented with a suggestive photo-array and makes a positive identification of the accused.

6.  Where there is legally insufficient evidence to support a conviction for complicity to commit aggravated murder, then the trial court is mandated to grant an accused a verdict of not guilty.

7.  Where there is legally insufficient evidence to support a conviction for murder, then a trial court is mandated to grant an accused a verdict of not guilty.

8.  Where there is legally insufficient evidence to support a conviction for complicity to commit murder, then a trial court is mandated to grant an accused a verdict of not guilty.

9.  Where there is a legally insufficient evidence to support convictions for kidnapping, then a trial court is mandated to grant an accused a verdict of not guilty.

6

10. Where there is legally insufficient evidence to support convictions for complicity to commit kidnapping, then a trial court is mandated to grant an accused a verdict of not guilty.

11.  Where there is legally insufficient evidence to support convictions of Felonious Assault, then a trial court is mandated to grant an accused a verdict of not guilty.

12.  Where there is legally insufficient evidence to support convictions for complicity to Commit Felonious Assault, then a trial court is mandated to grant an accused a verdict of not guilty.

13.  Where the verdicts finding the appellant guilty are against the manifest weight of the evidence and are contrary to law, the accused is entitled to a judgment of acquittal.

(Doc. 14, RX 15.)  On March 2, 2005, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Doc. 14, RX 16; State v. Hubbard, 105 Ohio St.3d 1452, 823 N.E.2d 457 (2005).)

Hubbard filed a timely petition for a writ of habeas corpus, which has since been amended, in this court on March 2, 2006.  (Doc. 1, 5, 11.)


## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law, "a substantially higher threshold."  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (May 14, 2007).  See also Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

The respondent concedes that all of the grounds of the petition have been properly exhausted in the state courts, doc. 14, at 9, thus the court will address the merits of each claim.


### III.  CLAIMS REGARDING CO-DEFENDANT

The first ground of the petition is:

Due Process was violated when the state trial court refused to grant Petitioner's request for severance and permitted the introduction into evidence of incriminating statements by a co-defendant against the Petitioner in the absence of the opportunity for cross-examination.

(Doc. 11, at 8.)

This claim has two parts:  1) the trial court's denial of the request for severance, and 2) the court's admission of "incriminating statements" by co-defendant Nichole Hubbard ("Nichole," petitioner's sister) against Hubbard "in the absence of the opportunity for cross-examination. "  Id.

Hubbard recognizes that Ohio law permits two or more defendants to be tried together, but he argues that a due process violation took place because the trial court refused to grant his motion for a separate trial.  (Doc. 11, at 23, citing Ohio R. Crim. P. 13, and Ohio Rev. Code § 2941.04.)

"[W]hether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal . . . a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial."  Payne v. Bobby, No. 2:05cv050, 2006 WL

9

508784, at *10 (S.D. Ohio Feb. 27, 2006) (quoting <u>Fox v. Ward</u>, 200 F.3d 1286, 1292 (10th Cir. 2000)).  <u>See generally</u> <u>Opper v. United States</u>, 348 U.S. 84, 95 (1954) (decision on motion for severance within sound discretion of trial judge); <u>United States v. McKinney</u>, 379 F.2d 259, 264-265 (6th Cir. 1967) (same).  Hubbard contends that prejudice did ensue.

In his motion for severance, Hubbard contended that Nichole's "exercise of her Fifth Amendment privilege against self-incrimination, coupled with the admission of a written statement she made to police, which implicated [Hubbard] in the homicide of Omar Clark, supported his request for, and indeed required, a severance." (Doc. 11, at 13.)  On direct appeal, Hubbard argued that the denial of his motion led to "a clear <u>Bruton</u> violation."  <u>See</u> doc. 14, RX 7, at 13-14.

Hubbard argued on appeal that the state's "sole purpose of the admission of Nichole Hubbard's written statement was to show a complicitious [*sic*] relationship with her brother . . . [and] the appellant Cordell Hubbard could not challenge the veracity of the written statement because the co-defendant Nichole Hubbard did not testify."  <u>Id.</u> at 13.

The state court of appeals rejected Hubbard's arguments as follows:

> In general, an accused's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment is violated in a joint trial with a nontestifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused. <u>State v. Moritz</u> (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268, paragraph one of the syllabus, * * * following <u>Bruton v. U.S.</u> (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. <u>Crawford v. Washington</u> (2004), 541 U.S. 36,

10

124 S.Ct. 1354, 158 L.Ed.2d 177, syllabus. But, " '[t]he mere finding of a violation of the <u>Bruton</u> rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.' * * *

In the instant case, Detective James Metzer testified that, during his investigation of the crime, Nichole Hubbard voluntarily gave a statement. Nichole stated that she had called her brother only once during the night in question and that she did not reach him, but instead got his voice mail; she did not leave a message, but hung up the phone.[FN3]

> FN3. Testimony given by both Brett Trimble, records custodian for Sprint Communications, and by Kristin Clark, records custodian for Verizon Wireless, disputes this fact. Trimble, Clark and Metzer all testified that the cellular phone records indicate seven calls between Nicole's cell phone and the cell phone number assigned to appellant, and no calls were referred to voice mail.

The question, then, is whether this information inculpates appellant such that <u>Bruton</u> would apply. Pursuant to the hearsay rule, a declarant's invocation of his Fifth Amendment right against self-incrimination has been held to render the declarant "unavailable" for purposes of a hearsay exception. * * * It is clear that Nichole's statement is admissible pursuant to the hearsay exception found in Evid.R. 804(B)(3), which states:

"A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused is not admissible unless corroborating circumstances clearly indicated the trustworthiness of the statement." * * *

11

After a review of the statement in question, we cannot hold that it implicates appellant in the shooting, thus, <u>Bruton</u> would not apply and appellant has not been denied his rights under the Confrontation Clause. In fact, there was limited reference to appellant in the statement; it dealt, in large part, with Nichole's involvement in the activities prior to the shooting. Further, Nichole stated that she did not know who was responsible for the shooting. Therefore, the statement itself does not inculpate the appellant, and Nichole cannot be a "witness against" appellant such that <u>Bruton</u> would apply. Moreover, even if we were to find that the <u>Bruton</u> rule applied in this case and was violated by the trial court's failure to sever the proceedings, there existed sufficient evidence against the appellant, as discussed below, to render any such failure harmless error.

For these reasons, we find no error in the trial court's denial of the motion for separate trials, and this assignment of error is overruled.

(Doc. 14, RX 10, at 6-9; <u>Hubbard</u>, 2004 WL 1944810, at *2-*3 (some internal citations omitted).)

Hubbard contests the appellate court's findings on several grounds.  He argues that Nichole's statement was in fact hearsay, because it was it was "offered in evidence to prove the truth of the matter asserted."  (Doc. 11, at 26, citing Ohio R.Evid. 801(c).)  Hubbard offered an alibi defense, and he argues that "the state intended to have the jury infer from these statements that Hubbard was attempting to obtain fabricated alibi testimony, an act that revealed a 'guilty mind' on his part regarding the shooting."  <u>Id.</u>  Hubbard asserts that the state court's hearsay analysis should have determined "whether the inferences the state sought to elicit by introducing the statement were included within the set of 'assertions' contained therein."  <u>Id.</u> at 26-27.

12

Hubbard asserts that the admission of Nichole's statement violated his right to confrontation.  Id. at 13-14, 21-22, 27-28.  Hubbard also argues that the state's case against him was not sufficiently strong to justify the conclusion that the admission of the statement was harmless error.  Id. at 28.

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI, quoted in Crawford v. Washington, 541 U.S. 36, 42 (2004).  See also Pointer v. Texas, 380 U.S. 400, 406 (1965) (applicable to the states).  The protection of the Confrontation Clause is not subject to "the vagaries of the rules of evidence."  Crawford, 541 U.S. at 61.  The Supreme Court in Crawford clarified that the Confrontation Clause requires that testimonial statements of witnesses absent from trial are properly "admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  Id. at 59, 68.

The Confrontation Clause applies to "witnesses" against the accused, those who "bear testimony."  Crawford, 541 U.S. at 51.  See also Davis v. Washington, 126 S.Ct. 2266, 2274-2276 (2006) (Confrontation Clause applies only to testimonial hearsay).  Thus, one relevant question is whether the statements of Nichole are "testimonial."  See, e.g., United States v. Cromer, 389 F.3d 662, 672 (6th Cir. 2004). The Crawford Court did not undertake a comprehensive definition of "testimonial," but noted that, at a minimum, it covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  Crawford,

13

541 U.S. at 68; <u>Cromer</u>, 389 F.3d at 672.  Testimony may also be defined as "[a]

solemn declaration or affirmation made for the purpose of establishing or proving

some fact."  <u>Cromer</u>, 389 F.3d at 672 (quoting <u>Crawford</u>, 541 U.S. at 51).

The Sixth Circuit has stated that the focus should be on the declarant:

> The proper inquiry . . . is whether the declarant intends to bear
> testimony against the accused. That intent, in turn, may be
> determined by querying whether a reasonable person in the declarant's
> position would anticipate his statement being used against the accused
> in investigating and prosecuting the crime.

<u>United States v. Johnson</u>, 440 F.3d 832, 843 (6th Cir.), <u>cert. denied</u>, 127 S.Ct. 48

(2006) (quoting <u>Cromer</u>, 389 F.3d at 675).

In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the Supreme Court ruled

that "the Confrontation Clause of the Sixth Amendment forbids the admission of a

nontestifying codefendant's facially incriminating confession in a joint trial, even

where the jury has been given a limiting instruction."  <u>Dickerson  v. United States</u>,

530 U.S. 428, 458 (2000) (citing <u>Bruton</u>).  <u>Bruton</u> thus involved "inadmissible

hearsay evidence inculpating petitioner."  <u>Bruton</u>, 391 U.S. at 137.  <u>See, e.g.</u>, <u>State</u>

<u>v. Moritz</u>, 63 Ohio St.2d 150, 407 N.E.2d 1268, 1269 (1980) (syllabus)

(Confrontation Clause violation by admission of extrajudicial statements made by

codefendant inculpating accused, following <u>Bruton</u>).

Nichole Hubbard "stated that she had called her brother only once during the

night in question and that she did not reach him, but instead got his voice mail; she

did not leave a message, but hung up the phone."  (Doc. 14, RX 10, at 7; <u>Hubbard</u>,

2004 WL 1944810, at *3.)  The state court found that this statement did not

14

inculpate Hubbard, and was thus not testimonial.  The court found that <u>Bruton</u> did

not apply, and there was no violation of Hubbard's confrontation rights.  (RX 10, at

9; <u>Hubbard</u>, 2004 WL 1944810, at *3.)

This court cannot find that the state court's determination regarding

testimonial hearsay was an unreasonable application of clearly established federal

law.  Nichole's statement concerned her own actions, specifically, that she called

Hubbard once and hung up without speaking to him.[1]  Her statement does not

inculpate Hubbard, nor does it assert anything about Hubbard at all, other than the

fact that she states that her call to him went unanswered.  Any inferences which

might be drawn from her statement are outside the hearsay rule.  <u>See, e.g.</u>, <u>United</u>

<u>States v. Zenni</u>, 492 F.Supp. 464 (E.D. Ky. 1980) (implied assertions not hearsay).

Hubbard has failed to demonstrate that the state court's determination was

an unreasonable application of clearly established federal law as determined by the

Supreme Court in <u>Bruton</u> and <u>Crawford</u>.  The petition should not be granted on the

first ground.


## IV.  CLAIMS REGARDING IDENTIFICATION WITNESSES

The second ground of the petition is:

---

1Although doubt was cast on the veracity of Nichole's statement, by
testimony that she had actually made seven calls to Hubbard's phone (RX 10, at 7
n.3; <u>Hubbard</u>, 2004 WL 1944810, at *3 n.3), this would further weigh against its
being "offered in evidence [by the prosecution] to prove the truth of the matter
asserted."

> Due Process was violated when Petitioner's identification was based on
> a flawed and unreliable photo array and the testimony of a witness
> who was clearly intoxicated and under the influence of drugs and
> another witness who previously stated that she could not possibly
> identify anyone at the murder scene.

(Doc. 11, at 9.)  This claim concerns the identification testimony of Clark Williams

and Tennita Johnson.  Id. at 29-33.  Hubbard contends that the photo array was

unduly suggestive, and the identifications were unreliable.

The state court of appeals utilized the following standards in considering

Hubbard's claims:

> When a witness has been confronted with a suspect before trial, due
> process requires a court to suppress an identification of the suspect if
> the confrontation was unnecessarily suggestive of the suspect's guilt
> and the identification was unreliable under all the circumstances.
> State v. Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819, citing
> Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d
> 140, and Neil v. Biggers (1972), 409 U.S. 188, 196-198, 93 S.Ct. 375, 34
> L.Ed.2d 401. However, no due process violation will be found where an
> identification does not stem from an impermissibly suggestive
> confrontation, but is instead the result of observations at the time of
> the crime. Coleman v. Alabama (1970), 399 U.S. 1, 5-6, 90 S.Ct. 1999,
> 26 L.Ed.2d 387.
>
> The United States Supreme Court in Manson v. Brathwaite and Neil v.
> Biggers, supra, developed a two-step process in determining the
> reliability of the eyewitness identification process. This two-step
> process initially requires that the appellant prove that the
> identification procedure used was unnecessarily and impermissibly
> suggestive. The Supreme Court held that the trial court must then
> balance the suggestiveness of the identification procedure against the
> following factors: 1) the opportunity of the witness to view the criminal
> at the time of the crime; 2) the witness' degree of attention; 3) the
> accuracy of the witness' prior description of the criminal; 4) the level of
> certainty demonstrated by the witness at the confrontation; and 5) the
> length of time between the crime and the confrontation. State v.
> Sanders (June 15, 1989), Cuyahoga App. No. 55524 at page 7.

16

(Doc. 14, RX 10, at 10-11; <u>Hubbard</u>, 2004 WL 1944810, at *4.)

An identification will violate a defendant's right to due process if the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968); <u>Howard v. Bouchard</u>, 405 F.3d 459, 469 (6th Cir. 2005), <u>cert. denied</u>, 126 S.Ct. 1032 (2006). "It is the likelihood of misidentification which violates a defendant's right to due process." <u>Howard</u>, 405 F.3d at 469 (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 198 (1972)). "Reliability is the linchpin in determining the admissibility of identification testimony." <u>Id.</u> (quoting <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114 (1977)).

The Sixth Circuit has set forth a two-step analysis for determining the admissibility of identification testimony. First, the petitioner must show that the identification procedure was unduly suggestive. <u>United States v. Sullivan</u>, 431 F.3d 976, 985 (6th Cir. 2005). The petitioner "bears the burden of showing impermissible suggestiveness." <u>Howard</u>, 405 F.3d at 469.

An improper photo array "steer[s] the witness to one suspect or another, independent of the witness's honest recollection," and is thus unduly suggestive. <u>Williams v. Lavigne</u>, No. 05-1398, 2006 WL 3780364 (6th Cir. Dec. 22, 2006), <u>petition for cert. filed</u> (July 10, 2007) (No. 07-5302) (Clay, J., concurring in part) (quoting <u>Wilson v. Mitchell</u>, 250 F.3d 388, 397 (6th Cir. 2001)). In other words, suggestiveness generally depends "upon whether the witness's attention was directed to a suspect because of police conduct." <u>Howard</u>, 405 F.3d at 469-470.

17

If the petitioner meets the burden of showing impermissible suggestiveness, then the court will evaluate the reliability of the identification.  <u>Sullivan</u>, 431 F.3d at 985.  If there is no showing of an impermissibly suggestive process, the court need not assess the reliability of the identification.  <u>Williams v. Lavigne</u>, 2006 WL 3780364 (Clay, J., concurring) (citing <u>Neil v. Biggers</u>, 409 U.S. at 199).

In assessing reliability, the court considers:

> . . . the totality of the circumstances, including the factors described in <u>Manson</u> and <u>Biggers</u>: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.

<u>Howard</u>, 405 F.3d at 472 (citing <u>Manson</u>, 432 U.S. at 114, <u>Neil v. Biggers</u>, 409 U.S. at 199-200).

Hubbard argues that the photo array in his case was flawed because the police "did not use the descriptions given by witnesses to compile the photo array." (Doc. 11, at 30.)  The state court ruled that "whether each and every suspect included in the photo array exactly matched the descriptions of witnesses to the crime is immaterial, as long as the array itself was not impermissibly suggestive." (Doc. 14, RX 10, at 12; <u>Hubbard</u>, 2004 WL 1944810, at *5.)  More importantly, the photo array was part of the record on appeal, and the court found that "all the suspects depicted in the photo array in question were similar in appearance and build to the appellant, and all had varying degrees of facial hair."  (RX 10, at 13;

18

Hubbard, 2004 WL 1944810, at *5.)  The court found that the identification procedure was not impermissibly suggestive.  Id.

The factual findings made by the state courts are presumed correct, and the presumption of correctness may be rebutted by the petitioner only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See, e.g., Lorraine, 291 F.3d at 422; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998), cert. denied, 527 U.S. 1040 (1999).  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and that presumption of correctness extends to factual findings of a state appellate court based on the state trial record.  Bowling v. Parker, 344 F.3d 487, 497 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004) (citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)). See also Hernandez v. New York, 500 U.S. 352, 366 (1991).  Thus, the state court's factual finding regarding the composition of the photo array is entitled to deference.

Because there is no showing of an impermissibly suggestive procedure, the court need not assess the reliability of the identification.  Williams, 2006 WL 3780364 (Clay, J., concurring) (citing Neil v. Biggers, 409 U.S. at 199). Nonetheless, the court notes that witness Clark Williams testified that:

> . . . he was certain that [Hubbard] was the man he had the altercation with because he had a face-to-face argument with him and was able to watch him closely while appellant was using his cell phone during the argument. Finally, Williams was able to identify [Hubbard] from the photo lineup within one month of the shooting. Williams testified that he was able to make the identification with "no uncertainty" the instant that he viewed the photo array.

(Doc. 14, RX 10, at 13; <u>Hubbard</u>, 2004 WL 1944810, at *5.)  As to witness Tennita Johnson, she testified that:

> . . . she witnessed the argument between [Hubbard], Sailor, Williams and the victim first, as she drove by, and then from her driveway, a few houses from where the altercation took place. All the men turned to look at her as she drove by, allowing her a good look at their faces. She was certain [Hubbard] was the man she saw in the street, and she was able to positively identify him from a photo array within days of the incident.

(Doc. 14, RX 10, at 13-14; <u>Hubbard</u>, 2004 WL 1944810, at *5.)

Hubbard has failed to demonstrate that the state court's decision involved an unreasonable application of clearly established federal law as determined by the Supreme Court in <u>Manson v. Brathwaite</u> and <u>Neil v. Biggers</u>.  The petition should not be granted on the second ground.


## V.  CLAIMS REGARDING OTHER DUE PROCESS VIOLATIONS

The third ground of the petition is:

> Due Process was violated by the admission of testimony in Petitioner's trial regarding inculpatory statements allegedly made to its author by a non-testifying co-defendant and when the prosecution presented a belated identification witness whose testimony was unavailable for challenge during the voire [*sic*] dire which was requested and granted prior to trial.

(Doc. 11, at 9.)

This claim has two parts:  1) the trial court's admission of the testimony of Ellen Taylor, who related telephone conversations she had with Nichole Hubbard on the night of the shooting, and the day after, and 2) the prosecution's failure to notify

the defense, pursuant to Rule 16, of the existence of Tennita Johnson as an identification witness.  Id. at 24, 35-37, and 31-32, 38.

## A.  Taylor testimony

In his direct appeal, Hubbard argued that the trial court erred when it allowed the testimony of Ellen Taylor "regarding statements allegedly made to her by co-defendant Nichole Hubbard implicating appellant," and the admission of this testimony was violated his right to confrontation.  (Doc. 14, RX 7, at 15-17.)  Specifically, Hubbard pointed to the following portions of Taylor's testimony:

> Q.  Okay.  In one of the first conversations that you had with Nichole and you heard the arguing, did she ever tell you that her brother was on the other line?
>
> A.  When we had the first phone call?
>
> Q.  One of the first conversations that you had with Nichole, did she ever tell you that her brother was on the other line and she hears them arguing?
>
> * * * * *
>
> Q.  What did she say about that?
>
> * * * * *
>
> A.  She was telling me and Maria that her brother was on the line on the other – on her other line arguing with the boys.[2]

(Doc. 14, RX 7, at 6-7, quoting Trial Tr., at 656-657.)

_____

2The respondent construes "the boys" to be Hubbard's children.  (Doc. 14, at 19, 27.)  It is apparent from the context of the conversation that "the boys" more likely indicates Clark Williams and the decedent Omar Clark.  (Doc. 14, RX 10, at 3-4; Hubbard, 2004 WL 1944810, at *1-*2; see also RX 7, at 16.)

Q.  Did she tell you anything about her brother in that phone conversation?

A.  Yes.

Q. What did she say?

A.  Her brother clicked in, and he want to know – wanted Maria to find out if the boy was still breathing.

Q.  That was the final conversation?

* * * * *

Q.  Did her brother click in while you were talking to her on the phone?

A.  Yes.

Q.  And did she click to her brother?

A.  Yes.

Q.  And she clicked back to you?

A.  Yes.

Q.  And at this point in time did you know what she was talking about?

A.  She checked in with me and Maria, said her brother called her and said for her to find out if Omar was still breathing.  She wanted – she wanted him to call, I guess, her brother — she wanted us to call around to the hospitals to see was that boy still breathing.

(RX 7, at 7-8, quoting Tr., at 658-659.)

Q.  Did you have a conversation with Nichole in the car the following day regarding her brother Cordell?

A.  Yes.

Q.  What did she tell you about him?

* * * * *

22

A.  She told me about her brother.  She was telling me and Maria about her brother got into it with the boys and that her brother took the boy – she was telling me and Maria about Cordell went over there and got into it with the boys and about Omar got killed.

Q.  Did she ever tell you that she had any conversation with him about him going over there?

A.  Yeah. She told us she told her brother not to go over there because everything was cool, and he went over there anyway.

(RX 7, at 8, quoting Tr., at 684-685.)

Hubbard's counsel moved for a mistrial.  He pointed out that he had previously moved for separation of the trials of Nichole Hubbard and Cordell Hubbard, and that the contested testimony implicated Cordell Hubbard in the homicide.  (Doc 14, RX 22, Tr., at 702-703.)  He continued:

MR. WATSON:  . . . In light of the fact that Nichole did not testify, will not testify, counsel cannot cross-examine those various statements that come into evidence.  So at this point I ask for a mistrial.

THE COURT:  On behalf of the State, Mr. Thomas.

MR. THOMAS:  Your honor, the testimony coming in through the State's witness Ellen Taylor is in the context of co-conspirator admissions, and there is no confrontation issue in that counsel has had the right to confront the declarant in court which is Ellen Taylor.  The subtext or the argument that counsel is making would prevent any conspiracy trial from going forward at any time.  There is no context of a custodial statement of one defendant against the other, and I believe the Court previously passed on this when we provided the Court with Lilly v. Virginia [527 U.S. 116 (1999)] and the other  associated Ohio case.  I believe it was Richmond – Robinson.  And we just stand on our prior argument and our prior case law.

THE COURT:  The motion is denied.

(Doc 14, RX 22, Tr., at 703-704.)

23

As mentioned previously, "Nichole Hubbard was unavailable as a witness due to her invocation of her right to remain silent." (Doc. 14, RX 10, at 8, 17; <u>Hubbard</u>, 2004 WL 1944810, at *3, *7.) The state court of appeals found that the "statement attributed to Nichole is not a testimonial statement, such that <u>Crawford</u>, supra, would apply." Accordingly, the court found no abuse of discretion in admitting the testimony.[3] (RX 10, at 17; <u>Hubbard</u>, 2004 WL 1944810, at *7.)

The Confrontation Clause of the Sixth Amendment provides an accused with the right to be confronted with the witnesses against him. <u>Crawford</u>, 541 U.S. at 42; <u>Pointer</u>, 380 U.S. at 406. <u>Crawford</u> clarified that the Confrontation Clause requires that testimonial statements of witnesses where the declarant is unavailable are properly admitted only where the defendant has had a opportunity to cross-examine. <u>Crawford</u>, 541 U.S. at 59, 68.

Again, the relevant question is whether the statements of Nichole are "testimonial." <u>See</u> <u>Cromer</u>, 389 F.3d at 672. The relevant inquiry here is "whether a reasonable person in [Nichole Hubbard's] position would anticipate [her]

---

3The respondent contends that the statements are admissible as statements against penal interest under Ohio R. Evid. 804(B)(3). (Doc. 14, at 25.) However, as the quoted portion of the transcript indicates, the prosecution at trial argued the statements were admissible as co-conspirator statements. Ohio Rule 801(D)(2)(e) reads: "A statement is not hearsay if . . . The statement is offered against a party and is . . . (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Ohio R. Evid. 801(D)(2)(e). Although Hubbard was not charged with criminal conspiracy, he was charged with complicity to commit several serious felonies. Nonetheless, in this court's view, none of the statements at issue were made "during the course and in furtherance of" any of those crimes.

statement being used against [her brother] in investigating and prosecuting the crime." Johnson, 440 F.3d at 843 (quoting Cromer, 389 F.3d at 675).  In finding her statements not testimonial, the state court of appeals ruled in effect that Nichole Hubbard would not anticipate that her statements such as, for example, "Cordell went over there and got into it with the boys and . . . Omar got killed," might be used against her brother.  See, e.g. doc. 14, at 24-25 (Nichole would not expect these statements to be used against petitioner).

Hubbard argues the statements attributed to Nichole by Taylor "clearly implicated" the petitioner in the homicide.  (Doc. 19, at 4.)  The defense had claimed that Hubbard was elsewhere at the time of the murder.  Id.  Hubbard asserts that:

> . . . a reasonable person would conclude that if someone was inquiring about the health  of the decedent (contemporaneously with the shooting), that statement, once revealed to law enforcement, would be used at a later trial.  The fact that these statements were admitted, inter alia, to prove Petitioner was at the scene of the homicide in face of the claim that he was not present unquestionably demonstrates this evidence was used as substantive proof of the Petitioner's guilt in this case.

(Doc. 19, at 5.)

This court finds that the statements of Nichole Hubbard were, at least in part, testimonial hearsay in that a reasonable person would anticipate (correctly, as it turns out) that these  statements would be used against Cordell Hubbard in investigating and prosecuting the crime.  Thus, the admission of these statements, without the opportunity for cross-examination, violated the petitioner's rights under the Confrontation Clause.  Crawford, 541 U.S. 36; Bruton, 391 U.S. 123.  See also

25

Davis, 126 S.Ct. at 2274-2276; Johnson, 440 F.3d at 843; Cromer, 389 F.3d at 672-675.

However, "Confrontation Clause errors are subject to harmless-error analysis."  Vasquez v. Jones, 486 F.3d 135, 146 (6th Cir. 2007), amended on rehearing, ___ F.3d ___ (6th Cir. July 24, 2007).  The Supreme Court recently reaffirmed that a federal habeas court must assess the prejudicial impact of constitutional error under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  Fry v. Pliler, 127 S.Ct. 2321 (2007).  The Brecht standard will apply in "virtually all" habeas cases.  Id. at 2325.

The petitioner makes reference to Chapman v. California, 386 U.S. 18 (1967), in which the Court held "that a constitutional error can be considered harmless only if a court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'"  Fry v. Pliler, 127 S.Ct. at 2325 (quoting Chapman, 386 U.S. at 24).  However, Fry clarified that the Chapman standard is limited to cases on direct review, and that Brecht's "more forgiving" standard governs on habeas review.  Id.

Under Brecht, the petitioner has to establish that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict," in order to obtain habeas relief.  Brecht, 507 U.S. at 637-638.  To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's verdict.  Mitzel v. Tate, 267 F.3d 524, 534 (6th Cir. 2001), cert. denied, 535 U.S. 966 (2002) (citing Brecht, 507 U.S. at 637).

26

There are a number of factors a court may consider in analyzing whether a Confrontation Clause error was harmless or not:

> These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Stallings v. Bobby, 464 F.3d 576, 582 (6th Cir. 2006).  After considering these factors and the overall strength of the prosecution's case, the court concludes that the constitutional error did not have  a "substantial and injurious effect or influence in determining the jury's verdict."

The hearsay testimony attributed to Nichole by Taylor was cumulative, and not crucial to the prosecution's case, in that two eyewitnesses testified that Hubbard was at the scene of the murder.  See generally doc. 14, RX 10, at 13-14, 22-23; Hubbard, 2004 WL 1944810, at *5, *9-*10.   Although there was no cross-examination at all of Nichole, neither does Hubbard point to any other evidence which contradicts the "substantial, credible evidence," RX 10, at 24; Hubbard, 2004 WL 1944810, at *11, that Hubbard was at the scene.  See generally doc. 19.

Although the court finds that Hubbard's rights under the Confrontation Clause were violated, the court finds the error to be harmless under the Brecht standard.


B. Rule 16 notification of witness

27

In his appeal, Hubbard also argued that the trial court erred when it allowed the testimony of Tennita Johnson as an identification witness.  (Doc. 14, RX 7, at 17-18.)  Hubbard asserted that the court should have granted a mistrial, because his case was "severely damaged" by the "significant and unexpected" testimony of Johnson.  Id. at 17.

The court of appeals recognized that, under Ohio Criminal Rule 16, "the prosecution has the obligation of making known to the defense prior to trial the names and addresses of all witnesses the prosecution intends to call," in order to prevent surprise.  (Doc. 14, RX 10, at 14; Hubbard, 2004 WL 1944810, at *6.)  Although Johnson was not called during the pre-trial hearing on petitioner's motion to suppress identification testimony, subsequently, at the time Johnson was called as a witness,  "the trial court conducted a voir dire examination of Ms. Johnson, outside the presence of the jury, and counsel for appellant was allowed to renew his motion for suppression of her testimony. The trial court then overruled the motion to suppress as to Ms. Johnson."  (RX 10, at 15-16; Hubbard, 2004 WL 1944810, at *6.)  The appellate court found no abuse of discretion in the trial court's action, and found that the court properly complied with Rule 16.

Hubbard complains that the state court violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963).  "Brady requires that the government turn over evidence in its possession to the defense that is both favorable to the accused and material to guilt or punishment."  Hicks v. Collins, 384 F.3d 204, 220 (6th Cir. 2004), cert. denied, 544 U.S. 1037 (2005) (citing Brady, 373 U.S. at 87.)  Under

28

Brady,  "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Hicks, 384 F.3d at 220 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

The Sixth Circuit has ruled that  "the Brady requirement only applies to evidence which the prosecutor knew or should have known was exculpatory." United States v. Lochmondy, 890 F.2d 817, 824 (6th Cir. 1989) (quoting United States v. Bibby, 752 F.2d 1116, 1125 (6th Cir. 1985), cert. denied, 475 U.S. 1010 (1986)).  Accord United States v.  Henry, No. 01-6607, 2003 WL 21774005, at *8 (6th Cir. July 30, 2003), cert. denied, 540 U.S. 1134 (2004).

Hubbard asserts that the state court should have granted a mistrial, because "the State had an obligation to present her testimony before the onset of trial." (Doc. 11, at 38.)  There is no requirement under the Due Process Clause, or Brady, that the prosecution provide the defense with advance warning of adverse witnesses.  United States v. Watts, 95 F.3d 617, 619 (7th Cir. 1996) (citing Weatherford v. Bursey, 429 U.S. 545, 560 (1977)); United States v. O'Brien, 951 F.2d 350, 1991 WL 270121, at *1 (6th Cir. 1991) (TABLE, text in WESTLAW) (per curiam); United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980).  The Supreme Court in Weatherford v. Bursey stated:

> It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably.  There is no general constitutional right to discovery in a criminal case, and Brady did not create one; as the Court wrote recently, "the Due Process

Clause has little to say regarding the amount of discovery which the parties must be afforded. . . ."

Weatherford, 429 U.S. at 559 (quoting Wardius v. Oregon, 412 U.S. 470, 474 (1973)).

Hubbard has failed to demonstrate that the state court's determination was an unreasonable application of clearly established federal law as determined by the Supreme Court in Brady.  The petition should not be granted on the third ground.


## VI.  SUFFICIENCY OF THE EVIDENCE

The fourth ground of the petition is that "Due Process was violated when the State Court misapplied the federal standard necessary to determine whether the guilty verdicts returned against the Petitioner were supported by insufficient evidence."  (Doc. 11, at 9.)

On appeal, Hubbard claimed that the state failed to show that he shared the criminal intent of the principal.  Thus, there was no proof that Hubbard acted in complicity with the shooter.  In addition, there was no evidence that Hubbard, by force or threat, restrained the liberty of the victims, so as to constitute kidnapping. (Doc. 14, RX 7, at 20-24.)

The state court of appeals affirmed the complicity convictions, as follows:

Appellant was found guilty of kidnapping, felonious assault and murder as both the principal actor and as an accomplice, pursuant to R.C. 2923.03. The trial court properly merged these counts for sentencing. Under R.C. 2941.25, "where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for

30

all such offenses, but the defendant may be convicted of only one." A major crime often includes as inherent therein the component elements of other crimes and these component elements, in legal effect, are merged in the major crime. State v. Williams (Apr. 22, 1993), Cuyahoga App. No. 62040 at 14, citing State v. Botta (1971), 27 Ohio St.2d 196, 201, 271 N.E.2d 776.

R.C. 2923.03 states in pertinent part:

> "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

> "(1) Solicit or procure another to commit the offense;

> "(2) Aid or abet another in committing the offense; * * * "

A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796. "Such intent may be inferred from the circumstances surrounding the crime." Id. at 246, 754 N.E.2d 796; see, also, State v. Langford, Cuyahoga App. No. 83301, 2004-Ohio-3733.

When viewing the facts of this case in the light most favorable to the prosecution, it is undisputed that Cordell Hubbard was not the "shooter" in this case and that the only weapon seen by any witness was brandished by codefendant Ru-el Sailor. Sailor testified during the trial that he and appellant were together the entire night and that they visited a number of bars and a cabaret between approximately 11:00 p.m. and 4:00 a.m. on the night in question. Sailor denied involvement in the shooting and disavowed any knowledge of appellant's involvement.

However, eyewitnesses, including Clark Williams, made positive identifications of Sailor and appellant as the aggressors at the scene of the murder, and cellular phone records support Williams' testimony as to the sequence of events that set in motion what became the murder of Omar Clark. Testimony of other witnesses also supports Williams' version of the events.

> After a thorough review of the record in this case, we find that there exists competent, credible evidence as to each count of complicity on which appellant was convicted, and a reasonable jury could have found that the elements of the crimes were proved beyond a reasonable doubt. Appellant received a phone call from his sister, which prompted him to proceed to Englewood Avenue in search of Clark and Williams. He engaged Williams in a verbal confrontation and confirmed with his sister/codefendant via cell phone that Williams was indeed the man who had "played" her. Williams further testified that he did not feel free to leave during the verbal altercation in that appellant was hostile and Sailor was pointing a gun at him. Williams, and other witnesses, also testified that appellant stated to him prior to making that call, "if [my sister] says you did it, you outta here." It is clear from the record that appellant intended to detain and harm Clark and Williams when he arrived at Englewood; even if he was not the "gunman," he clearly acted in complicity with Ru-el Sailor.

(Doc. 14, RX 10, at 20-23; <u>Hubbard</u>, 2004 WL 1944810, at *9.)  The court also affirmed the convictions on the charges of murder, kidnapping, and felonious assault:

> As discussed above, there was competent, credible evidence that appellant was, at the very least, an active accomplice to the shooting death of Omar Clark. Appellant was found guilty of all counts for which he was charged, except for aggravated murder. An accomplice may be prosecuted and punished as if he was the principal offender pursuant to R.C. 2923.03. Further, the trial court merged the appropriate counts in this case prior to sentencing such that the appellant was not subject to separate sentences for allied offenses.

(Doc. 14, RX 10, at 23; <u>Hubbard</u>, 2004 WL 1944810, at *10.)

The state court did not explicitly rely on federal case law, but based its ruling on Ohio law.  However, the court relied on <u>State v. Jenks</u>, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) (syllabus, ¶ 2), which followed the sufficiency of evidence standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  (Doc. 14, RX 10, at 20; <u>Hubbard</u>, 2004 WL 1944810, at *8.)  Thus, the issue is whether the state court

decision was an "unreasonable application" of clearly established federal law; in other words, whether the state court identified the correct governing legal principle from  Supreme Court decisions, but unreasonably applied that principle to the facts of Johnson's case.  <u>Williams</u>, 529 U.S. at 410-12.

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>Jackson</u>, 443 U.S. at 319; <u>Bagby v. Sowders</u>, 894 F.2d 792, 794 (6th Cir.) (en banc), <u>cert. denied</u>, 496 U.S. 929 (1990).  As quoted above, this was the standard applied by the state appellate court. (Doc. 14, RX 10, at 20; <u>Hubbard</u>, 2004 WL 1944810, at *8.)  Thus, the state court identified the correct governing legal principle from <u>Jackson v. Virginia</u>.

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  <u>Sanford v. Yukins</u>, 288 F.3d 855, 860 (6th Cir.), <u>cert. denied</u>, 537 U.S. 980 (2002) (quoting <u>Jackson</u>, 443 U.S. at 324 n.16).  Thus, the federal court must look to state law to determine the elements of the crime.  <u>Cameron v. Birkett</u>, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999), <u>cert. denied</u>, 528 U.S. 1170 (2000)).  The state court of appeals set forth the relevant elements of the offenses, as quoted above, and explained the justification for the convictions.  Viewing the evidence in the light most favorable to the prosecution, the court found "competent, credible evidence" with which a rational

33

jury could have found the essential elements of the crime beyond a reasonable doubt.

To grant habeas relief, the federal court does not determine whether the state decision is erroneous or incorrect.  Rather, the court must determine whether the state court decision is an objectively unreasonable application of federal law. <u>Williams</u>, 529 U.S. at 410-12; <u>Lorraine</u>, 291 F.3d at 422.  Here, the court does not find that the state court decision was an "unreasonable application" of <u>Jackson v. Virginia</u>, to the facts of Johnson's case.

The petition should be denied as to the fourth ground.

## VII.  SUMMARY

The petition for a writ of habeas corpus should be denied.  Hubbard has failed to show that the state court decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

RECOMMENDATION

It is recommended that the petition be denied.


Dated:   July 31, 2007                              /s/ Kenneth S. McHargh
                                                    Kenneth S. McHargh
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).