UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Cordell Hubbard,** | ) | **CASE NO. 1:06 CV 481** |
| | ) | |
| Petitioner, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Maggie Bradshaw, Warden,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Respondent. | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge McHargh (Doc. 20) which recommends denial of the Petition for Writ of Habeas Corpus now pending before the Court.  For the following reasons, the Report and Recommendation is ACCEPTED.

**Introduction**

Petitioner, Cordell Hubbard, commenced this action with the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is incarcerated after a jury trial in the Cuyahoga County Court of Common Pleas.  This matter has been fully briefed and the Magistrate Judge issued his Report and Recommendation recommending that the Petition for

1

Writ of Habeas Corpus be denied.  Petitioner has filed Objections to the Report and Recommendation.

**Standard of Review**

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides, "The judge must determine *de novo* any proposed finding or recommendation to which objection is made.  The judge may accept, reject, or modify any proposed finding or recommendation."

**Discussion**

The Ohio Court of Appeals, Eighth Appellate District, set forth the following facts:

Appellant was indicted and tried with two codefendants, Nichole Hubbard, appellant's sister, and Ru-el Sailor. At the conclusion of trial, appellant was found guilty of complicity to commit aggravated murder..., murder ..., complicity to commit murder ..., kidnapping ..., complicity to commit kidnapping..., felonious assault ... and complicity to commit felonious assault ..., all with one-year firearm specifications. ... The trial court then sentenced appellant to a total of 23 years to life in prison ...

The facts relative to this case are as follows. On the evening of November 17, 2002, Nichole Hubbard, Clark Williams ("Williams"), Maria Whitlow and Omar Clark ("Clark") were "hanging out" at the home of Ellen Taylor. Later in the evening, Nichole, Williams, Clark, and Whitlow left to procure drugs. Nichole gave Williams twenty dollars to purchase a "wet" cigarette [A cigarette dipped in a solution containing PCP], with the understanding that he was to pay her back in full. Whitlow did not participate in the drug buy and was dropped off at her house before the purchase was made. After smoking the wet cigarette, Williams repaid Nichole only ten dollars, arguing that she shared in the drugs and should bear some of the cost. Nichole became enraged and accused Williams and Clark of cheating or "playing" her. She called her brother, appellant, on her cell phone; she then got in her car and left. Williams and Clark proceeded down Englewood Road toward the home of Ellen Taylor.

A short time later, appellant and Ru-el Sailor arrived on Englewood Road. Appellant and Williams argued about the money Nichole claimed Williams owed to her. Meanwhile, Clark confronted Sailor, who was the driver of the car. Williams noticed that appellant used his cell phone during the altercation; he then noticed that Sailor was holding a gun on him. Williams began to run when shots rang out. In the melee, Clark was shot eleven times and killed. Williams suffered a slight gunshot wound but survived the attack.

> Detective James Metzer of the Cleveland Police Department was assigned to investigate the case. He spoke with Williams and with Nichole Hubbard, who made a statement to police with an attorney present. Within one month of the shooting, Williams was able to identify appellant from a photo array as the man he had argued with on the night in question; he later identified Ru-el Sailor as the "shooter." Nichole Hubbard stated that she had indeed argued with Williams and had tried to contact her brother, but was only able to reach his voice mail and did not speak to him on the night in question. She also told the detective that Williams threatened her with a gun before she left the scene; however, Williams denied having a gun and no evidence that he was armed was presented.
>
> During the course of his investigation, Det. Metzer learned that Nichole Hubbard actually made seven calls to her brother's cellular phone between 11:57 p.m. and 12:47 a.m. on the night in question, and none of those calls was referred to voice mail. This information was confirmed by cellular phone records obtained from Verizon Wireless and Sprint Communications and introduced into evidence.
>
> Appellant was indicted and tried with Ru-el Sailor and Nichole Hubbard; of the defendants, only Ru-el Sailor testified. Williams and other witnesses to the shooting took the stand. Nichole Hubbard's statement to the police was also admitted as evidence. As to the appellant, the jury returned guilty verdicts on all counts except aggravated murder. At his sentencing hearing, appellant stated that he was with a man named Will on the night of the shooting and that Sailor was not there. However, at a hearing on Sailor's motion for a new trial, appellant testified that he shot Clark in self-defense (a defense never asserted at trial) while accompanied by a man named William Sizemore and that Sailor had nothing to do with the shooting.

*State v. Hubbard,* 2004 WL 1944810 (Ohio App. 8th Dist. Sept. 2, 2004).

After exhausting his claims in the state court, petitioner filed the instant Petition which was subsequently amended to assert four grounds for relief. The Magistrate Judge analyzed each ground on the merits and determined that none warranted granting the writ.  For the following reasons, this Court agrees.

Ground One asserts that Due Process was violated when the state trial court refused to grant petitioner's request for severance and permitted the introduction into evidence of incriminating statements by a co-defendant against the petitioner in the absence of the opportunity for cross-examination.

3

As stated above, petitioner was tried with two co-defendants, Nichole Hubbard (his sister) and Ru-el Sailor.  Nichole Hubbard did not testify at trial and the trial court permitted introduction at trial of her written statement to police that she had called her brother, petitioner, by cell phone only once on the night in question but she was only able to reach his voice mail and she did not speak to him or leave a message.  Petitioner argued in the state court that this statement inculpated him.  The appellate court concluded that the statement did not implicate petitioner and, consequently, he was not denied his rights under the Confrontation Clause because the statement dealt with Nichole's involvement in the activities prior to the shooting and she had stated that she did not know who was responsible for the shooting.  That court also determined that given the sufficient evidence against petitioner, any erroneous failure to sever the proceedings was harmless error.  Upon review, this Court agrees with the finding of the Magistrate Judge that the state court decision did not involve an unreasonable application of clearly established federal law because Nichole Hubbard's statement did not implicate petitioner but concerned her own actions.

Ground One has no merit.

Ground Two asserts that Due Process was violated when petitioner's identification was based on a flawed and unreliable photo array and the testimony of a witness who was clearly intoxicated and under the influence of drugs and another witness who previously stated that she could not possibly identify anyone at the murder scene.

The state court, which had the photo array as part of the record on appeal, found that the identification procedure was not impermissibly suggestive.  The Magistrate Judge concluded that the state court's factual findings in this regard were entitled to deference in the absence of clear

4

and convincing evidence to rebut their correctness. Petitioner argues that the photo array was unduly suggestive because the pictures submitted to the witnesses were substantially dissimilar in appearance and build to the petitioner, and all of the suspects except petitioner had varying degrees of facial hair. The state appellate court viewed the photo array and concluded that all the suspects depicted were similar in appearance and build to the appellant, and all had varying degrees of facial hair. Without clear and convincing evidence to the contrary, the state court's factual findings are presumed correct.

Ground Two has no merit.

Ground Three asserts that Due Process was violated by the admission of testimony at trial regarding inculpatory statements allegedly made to its author by a non-testifying co-defendant, and when the prosecution presented a belated identification witness whose testimony was unavailable for challenge during the voir dire which was requested and granted prior to trial.

In particular, petitioner objects to the trial court's admission of the testimony of Ellen Taylor, who related telephone conversations she had with Nichole Hubbard on the night of the shooting and the day after, and the prosecution's failure to notify the defense of the existence of Tennita Johnson as an identification witness.

Petitioner asserts that Ellen Taylor's testimony implicated petitioner because it put petitioner at the scene of the murder and he could not confront Nichole Hubbard who did not testify at trial. This Court agrees with the Magistrate Judge's finding that while Hubbard's statements were, at least in part, testimonial hearsay and their admission, consequently, violated petitioner's rights under the Confrontation Clause as he had no opportunity for cross-examination, the error was harmless. Specifically, the hearsay testimony attributed to Nichole

Hubbard by Ellen Taylor was cumulative and two other eyewitnesses testified that petitioner was at the scene of the murder.

With regard to petitioner's assertion that the state court erred in allowing the testimony of Tennita Johnson as an identification witness, the Magistrate Judge determined that there was no unreasonable application of clearly established federal law.  This Court agrees in that, as pointed out by the Magistrate Judge, there is no requirement under the Due Process Clause or *Brady v. Maryland*, 373 U.S. 83 (1963), that the prosecution provide the defense with advance warning of adverse witnesses.

Ground Three lacks merit.

Ground Four asserts that Due Process was violated when the state court misapplied the federal standard necessary to determine whether the guilty verdicts returned against the petitioner were supported by insufficient evidence.

Again the Magistrate Judge found no unreasonable application of clearly established federal law as to the state appellate court's determination that competent, credible evidence existed with which a rational jury could have found the essential elements of the crime beyond a reasonable doubt.  This Court agrees that petitioner is not warranted relief on the sufficiency of the evidence claim as a review of the state appellate court's decision does not show an unreasonable application of federal law.

For the foregoing reasons, petitioner has not demonstrated that the Petition for Writ of Habeas Corpus should be granted.

**Conclusion**

For the reasons set forth herein and for the reasons set forth in the Magistrate Judge's

Report and Recommendation, the Petition for Writ of Habeas Corpus is denied.  Further, this Court hereby fully incorporates the Report and Recommendation by reference herein.

This Court now considers whether to grant a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253 which states in relevant part:

> \*\*\*
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the United States Supreme Court determined that

> "[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"

*Id.* at 483-4 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) ).

If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong."  *Id.* at 484.  In instances where a claim is  procedurally defaulted, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* (emphasis supplied).

7

For the reasons stated above and in the Report and Recommendation, this Court finds no basis upon which to issue a certificate of appealablity.

IT IS SO ORDERED.

                                       /s/ Patricia A. Gaughan
                                       PATRICIA A. GAUGHAN
                                       United States District Judge

Dated: 11/19/07